Mr. Chief Justice Sharkey
delivered the opinion of the court.
A motion is made in this court for a supersedeas to the order or decree of the superior court of chancery, by which Hughes was directed to deliver to Buckingham all the books, papers, book-cases, desks, &c. belonging to the office of clerk of that court. It appears, by the record, that Buckingham was appointed to the clerkship of that court on the 8th of the present month, and in virtue of such appointment claims the books and papers. Hughes resists the claim on the ground that he was appointed to that office by chancellor Buckner, on the 9th of December, 1844, for the term of four years, and that he was the ■proper incumbent when Buckingham was appointed, and has a right to the custody of the books and papers, and also a right to the office of clerk. In the application is therefore involved the right to exercise and enjoy the office of clerk of the superior court of chancery.
In providing for the establishment of this court, the constitution is silent on the subject of its clerk, whilst the provisions of that instrument are ample in reference to every other officer. By act of the legislature, passed in March, 1833, the chancellor was clothed with power to appoint his clerk, but the tenure of office was not fixed by the act. By a general law, passed in December, 1833, the tenure of all offices, not otherwise provided for, was limited to four years. The superior court of chancery was organized under the present constitution, prior to the passage of the law of December, 1833, and when there was no pro *647 vision limiting the tenure of office of the clerk, other than that general provision in the constitution, which declares that no person shall ever be appointed or elected to any office in this state for life, or during good behavior; but the tenure of all offices shall be for some limited period of time. Chancellor Quitman, in organizing the court, appointed H. K. Moss clerk, on the 15th of June, 1833, and in view of the constitutional provision, there being then no law on the subject, conferred the office on Moss for four years from the time he should qualify. Moss held the office about a year, and his successor was also appointed for the term of four years, by the same chancellor, the law of December, 1833, having in the mean time limited the term to four years. This last appointment was made in July, 1834, and the commission confers the office for four years from its date. Chancellor Quitman then undoubtedly regarded the time of appointment as the beginning of the period for which the incumbent was to hold, and the subsequent appointments furnish incontestable evidence that his successors took the same view as to the tenure of the office of clerk, up to the appointment of Buckingham by the present chancellor. Notwithstanding these repeated decisions on the question, it is now contended that the law of December, 1833, so fixed the tenure of the office as to bring about its beginning and ending in cycles of four years each, commencing with the passage of the law. We cannot agree to the premises assumed, or in.tl&e conclusion. The appointment of Moss, in 1833, was undoubtedly a valid appointment, and vested in him an interest or property in the office for four years. The only limitation on the authority of the chancellor, was the constitutional provision that the tenure of office should be for some definite period. That was observed by Chancellor Quitman, and if he had conferred the office for even a longer period, still it would have been valid. The law which passed whilst Moss was legally in office, could in no way affect him. The act then had no valid operation until Moss resigned in 1834. The first period of time at which it could begin to operate was on the 24th of July, 1834, when Hadly was appointed. In the absence of an express declaration as to *648 the time when the tenure should, begin, it could only begin of course when the law began to operate, to wit, on the 24th' of July, 1834. The law did not say that the period of four years should begin to run from its passage, or from any given time. It could not, therefore, begin to run until the law could operate. On the principle contended for, the chancellor himself would hold his office for six years, beginning, not at the time of his election, but at the time the constitution went into operation ; for the declaration in the constitution is, that a chancellor shall be elected by the qualified electors of the whole state, “ for the term of six years.” We know, however, that his term begins from the time of his appointment, and as the time of appointing is fixed by the constitution, the duration of his term of office is thus necessarily measured with reference to that time. If we could even so construe the act as to make it indicate the beginning of the term, we could not possibly fix that time before the 24th of July, 1834, for up to that time the office was constitutionally filled. Counting by periods of four years from that time to the time this appointment was made, it will be seen that the office was filled.
But that is not the true construction. The chancellor has power to appoint a clerk. The law declares how long that clerk shall hold when appointed, but it does not declare when the appointment shall be made. On general principles, then, each appointew&t must hold for the length of time prescribed by the statute. The term of four years relates to the incumbent, not to the office. The office, or the interest in it, is not divided out into periods of four years each. Each incumbent has an interest which may continue four years, or it may be forfeited, or abandoned sooner. A term by the common law does not signify merely a given time, but the estate or interest which the holder has in the thing held. The term, therefore, may expire during the continuance of the time. Let us suppose the legislature clothed with power to dispose of this office, and that it is first granted to A for the term of four years, and to B four years after A’s term shall have expired. A holds one year and resigns; does not B’s term immediately begin? Surely it does. *649 The act of the legislature, in conjunction with the action of the chancellor, produces precisely this result. The legislature>has bestowed the interest, but the chancellor appoints the recipient or incumbent. If the incumbent so appointed, should choose 'to abandon or forfeit his interest, the term of his successor commences so soon as he may be designated by the chancellor, and the law, or the grant, gives him the full term; not a remnant which had been abandoned by his predecessor. The case of Smith v. Halfacre, 6 How. 582, decides the principle now involved. The great struggle in that case was to show, -that no period was fixed by the constitution for the commencement of the judge’s term of office, and that he was therefore entitled to hold for the full period of four years from the time of his election. And it was fully conceded by the court, that this would have been the result of an omission to designate the commencement of the term. But we held that on a fair construction, the constitution did provide for the beginning and the end of the term. The analogies, drawn from the practical exposition given to this question by the federal government, are entitled to great weight. The marshals hold for four years, and so do the territorial judges. These terms have always been considered as beginning at the time of appointment, and as vesting in the person appointed the right to enjoy the office for the full time prescribed. This question moreover is not now a new one in this state. It arose at least as early as the year 183^a¿id frequently since. The distinguished chancellors who have had it before them, seem to have bestowed on it due consideration, and have decided with entire uniformity. These determinations, running through a period of thirteen years, might well induce us to pause long before we could feel satisfied that these conclusions were erroneous, as doubtless did the chancellor before he made the decree. The great difference between this and the offices created by the constitution, is that the law does not designate any particular time at which the chancellor shall make his appointment. The sense of the provision is, that the clerk when appointed, shall hold four years. The officers who are elected by the people, necessarily hold from the time of the general *650 elections, and for the sake of uniformity in the operation of the government, their terms of office expire at a general election. By providing that officers shall be elected at the general election, and hold for a given term, and by providing that the general elections shall take place-biennially on the first Monday in November, it follows that the tenures of all offices created by the constitution, were regulated with a view to the general elections. The consequence is, that the office was legally filled when Buckingham was appointed; his appointment was therefore inoperative.
Let the supersedeas be granted.